7834

STATE v. DUNCAN.

1. ADMISSION OF EVIDENCE by wife tending to show that the person who had killed her husband came to his store a few days after the killing and made an assault upon her, sustained, because: (1) similar evidence had been previously admitted without objection, and (2) it was competent as tending to show he wanted her out of the way because she could testify that he often visited the store and conversed with deceased in contradiction of his statement that he did not know the deceased or where his store was.

2. REHEARING refused.

Before WATTS, J., Charleston, September term, 1910.
Affirmed.

Indictment against Daniel Duncan for murder of Mat
Lubelsky.   Defendant appeals.

*Messrs. B. H. Mathews* and *Paul M. Macmillan,* for
appellant, cite: *Evidence of a different and subsequent trial
cannot be introduced in a trial for murder:* 1 Green. Ev.,
secs. 51 and 52; 40 S. C. 481; 56 S. C. 360; 82 S. C. 153; 68
S. C. 421; 41 S. C. 526; 13 S. C. 459; 62 L. R. A. 193;
21 N. E. 821; 25 N. E. 764; 72 S. W. 1005.

*Solicitor John H. Purifoy,* contra, oral argument.

The opinion in this case was filed February 27, 1911, but
remittitur held up on petition for rehearing until

March 27, 1911.   The opinion of the Court was deliv-
erel by

MR. JUSTICE GARY.   This is an appeal from the sentence
of death, imposed upon the defendant Daniel Duncan, for
the alleged murder of Max Lubelsky.

As stated by the appellant's attorneys, the practical ques-
tion presented by the exceptions, is, whether there was
error on the part of his Honor the presiding Judge,
in overruling the objection to the admissibility of
the testimony, which tended to show that the defend-
ant made an assault upon Mrs. Max Lubelsky, on the
ground that such testimony was irrelevant.

This question arose as follows, during the examination of
Mrs. Max Lubelsky, a witness for the State:

"As soon as I came back I buried my husband, I didn't
care any more for myself, I tried to keep up for the little
boy, so I opened the store, and as soon as I opened the
store, that fellow used to come in all the time.   Are you

sure he is the one? I am as sure as I am sitting here, that that is the devil. Now, Mrs. Lubelsky, you remember the 8th of July? Yes, sir; he opened my head, I have a mark right here. What did he hit you with? While I was fixing up a bundle, and waiting for the eight dollars, and when I was waiting for the change, I was talking about my trouble, my husband was so young—objected to as irrelevant. The Court: She can tell that she saw him that day, but I don't think she can go into all that. Now, Mrs. Lubelsky, what became of this man after he struck you? While I was waiting for the eight dollars, I lifted my eyes up and he struck me. Where did he go after he struck you? As soon as I got struck, I don't know what happened to me. Where did he go? I didn't see anything, I wished he would kill me. Where did you go? I tried to run to the front, and he opened his eyes so big, I thought he was going to tear me in pieces, and I got to the front and he got off.

"Counsel for the defendant: I object to all the testimony in regard to the 8th of July, on the ground that it is irrelevant. The Court: Gentlemen, she has a right to tell, whether she saw him on that day, and she has a right to state that he struck her, if he did, without going into the details, of it, and she can tell what became of him, if she knows; any other testimony along that line which has been brought out here, you disregard."

John Shuller, a witness for the State thus testified, on cross-examination: "You say you knew Duncan? I knew his face, but I didn't know his name, I saw him on the street, off and on. You saw him in the store that morning? He was all the time in there, off and on. Was he having any talk with Lubelsky? No more than they were laughing and joking, about the fight this man had that time. What man? Jack Johnson. Did you join in the conversation? Yes, sir, I said one or two words. With Duncan? With Max and Duncan."

Daniel Duncan, the defendant testified as follows, on cross-examination: "You know where Max Lubelsky's store was? I didn't know the name. You have been living here how long? Twenty-four years. And you don't know where Max Lubelsky kept store? No, sir."

James Hogan, a witness for the State thus testified: "From the time that Lubelsky was killed, until the time that Mrs. Lubelsky was assaulted, and four or five days afterwards, that coat remained in the store? I don't think so. Where had it been? I think that Duncan wore that coat, and took it off the day that he assaulted Mrs. Lubelsky, and left it in the store. The day that you heard he assaulted Mrs. Lubelsky? . Yes, sir."

There are two reasons, why the exceptions raising this question, cannot be sustained.

1. Because similar testimony, tending to show that the defendant, committed an assault upon Mrs. Lubelsky was introduced without objection.

2. Because the testimony tends to show, that the defendant had a motive, in killing Mrs. Lubelsky. He testified that he did not know where Max Lubelsky's store was, yet there was testimony to the effect, that he was in the store, time and again, and entered into friendly conversation with deceased.

Mrs. Lubelsky was aware of this fact; and, he may have supposed, that if her lips were sealed in death, no one could contradict his testimony, in this respect.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed, and that the case be remanded to that Court, for the purpose of having another day assigned, for the execution of the sentence.

Petition for rehearing was duly filed in this case and refused by order filed March 27, 1911.